The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on February 23, 2011, which
may be different from its entry on the record.

IT IS SO ORDERED.



_____
**Arthur I. Harris**
**United States Bankruptcy Judge**

Dated: February 23, 2011

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 09-21982 |
| | ) | |
| SOUTHWEST SPORTS | ) | Chapter 11 |
| CENTER, INC., | ) | |
|     Debtor. | ) | Adversary Proceeding |
| _____ | ) | No. 10-1312 |
| SOUTHWEST SPORTS | ) | |
| CENTER, INC., | ) | Judge Arthur I. Harris |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN KLEEM, *et al.*, | ) | |
|     Defendants. | ) | |
| _____ | | |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the motion of the defendants to

dismiss for lack of subject matter jurisdiction.  The parties have previously

litigated the real estate appraisal and sale of the plaintiff-debtor's commercial

_____

[1]  This Memorandum of Opinion is not intended for official publication.

property in state court proceedings. The defendants ask the Court to dismiss the adversary complaint for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine, which holds federal courts, except for the U.S. Supreme Court, do not have appellate jurisdiction over final state court judgments. For the reasons that follow, the defendants' motion to dismiss is granted as to Counts VI and VII and denied as to Counts I through V.

## FACTUAL AND PROCEDURAL BACKGROUND

Southwest Sports Center ("the debtor") owns commercial real property located at 975 and 1005 West Bagley Road, Berea, Ohio 44017. This commercial property is comprised of a golf driving range, a Dairy Queen Restaurant, a miniature golf course, and a single-family residence. (Docket #10, Ex. H). On April, 22, 1997, the debtor entered into a stock redemption agreement with John A. Kleem ("Kleem"). (Docket #1, Ex. A). Under the agreement, the debtor agreed to pay Kleem: (A) $8,000 in 1997, (B) $8,000 per year through 2006, and (C) 1/3 of the net proceeds of the sale of the debtor's real property after which all remaining payments under (A) and (B) would be deemed no longer payable. The stock redemption agreement also stated that:

> In the event the debtor has not entered into a contract for sale for the real property it owns, it may, at any time before November 1, 2006, have its real property appraised as follows:

2

A.      Kleem or his designated representative, shall meet with a representative of the debtor to value the debtor's real property. If an agreement regarding the then current value cannot be reached, Kleem and the debtor shall select an appraiser. If Kleem and the debtor cannot agree on an appraiser, appraisers shall be appointed as provided in Section B of this Paragraph.

B.      (1)     Kleem and the debtor shall each appoint an appraiser. If the appraisers appointed by Kleem and the debtor agree on a price for said real property, the real property shall be valued at that price.

        (2)     If the appraisers cannot agree on a price, they shall select a third appraiser. Each of the three (3) appraisers shall then submit their opinion of the value of the real property, and the average of the three values shall then be a final determination of such value.

        (3)     The debtor shall pay the reasonable fees of all appraisers, including the third appraiser [if] one is appointed. Such fees shall be considered an expense incurred in connection with the sale of the real property.[2]

(Docket #1, Ex. A).

On or about December 8, 2006, Kleem sent a letter to the debtor in which he alleged that the real estate subject to the stock redemption agreement had a fair market value of $2,650,000.00.  (Docket #1, Ex. B).  On May 11, 2007, Kleem filed suit against the debtor in the Cuyahoga County Court of Common Pleas to

---

[2] The original terms of the contract, "Corporation" and "Shareholder," have been replaced with "debtor" and "Kleem."

3

enforce the terms of the stock redemption agreement (Case No. CV-07-624066). (Docket #10, Ex. A). On January 24, 2008, Kleem filed a motion for partial summary judgment, seeking to confirm the parties' obligation to have the property appraised, and assessing damages. (Docket #10, Ex. B). In support of his motion, Kleem attached the affidavit and appraisal of Julian Vanni ("Vanni"), a State Certified General Real Estate Appraiser. Vanni appraised the fair market value of the property at $2,500,000.00.

On March 19, 2008, the state trial court granted Kleem's Motion for Partial Summary Judgment, ordering the debtor to appoint its own appraiser within 30 days. (Docket #10, Ex. D). The debtor appointed James T. Caldwell to appraise the property. Caldwell determined that the real property owned by the debtor had a fair market value of $1,300,000.00. The debtor submitted its appraisal to the court on June 16, 2008. (Docket #10, Ex. E). As the two appraisers, Vanni and Caldwell, could not reconcile their valuations of the property, the state court ordered the parties to select a third appraiser pursuant to the terms of the stock redemption agreement. (Docket #10, Ex. F).

On September 9, 2008, the third appraiser, Jeffrey T. Sherman determined that the real property owned by the debtor had a fair market value of $1,175,000.00. On October 7, 2008, the third appraisal was filed with the court.

4

At the pretrial conference, "all parties stipulated to the authenticity and admissibility of the three appraisals." (Docket #10, Ex. F). The parties each moved the court for summary judgment based on their respective interpretations of the appraisals and the contractual terms. The debtor also sought to exclude Vanni's appraisal because "it was based on erroneous and inaccurate information." (Docket #10, Ex. H). On December 15, 2008, the court denied the debtor's motion to exclude Vanni's appraisal, and granted summary judgment to Kleem for $136,111.00, based on the average of the three appraisals. (Docket #10, Ex. I, J). On December 16, 2008, Vanni filed a judgment lien for $136,111.00 in the Cuyahoga County Records Office (JL-08-356106). The debtor appealed the state trial court's decision on June 25, 2009. The state appellate court affirmed the trial court's order granting summary judgment to Kleem holding that the appraisals were not evidence from which the court was to determine the property's value but rather, the appraisals pertained to a contractual procedure for determining the property's value. *See Kleem v. Southwest Sports Ctr., Inc.*, No. 92674, 2009 WL 1819442 (Ohio App. 8 Dist. June 25, 2009).

On June 15, 2009, within a year of judgment in the first case and before the appeal was decided, the debtor filed a second complaint in the Cuyahoga County Court of Common Pleas (Case No. CV-09-695811). This complaint alleged that

5

Vanni acted fraudulently and with professional negligence, and that Kleem conspired with Vanni to defraud the court. (Docket #10, Ex. K). On November 23, 2009, the Ohio Department of Commerce, Division of Real Estate & Professional Licensing issued an Adjudication Order in which it found that Vanni provided false and misleading information in performing his appraisal of the debtor's real estate and also that Vanni rendered his appraisal services in a negligent or careless manner. (Docket #1, Ex. C).

On December 20, 2009, the debtor filed a voluntary bankruptcy petition under Chapter 11. On January 28, 2010, the debtor filed a notice to stay proceedings in the second state court action, which pertained to Vanni and Kleem's alleged fraud. On February 12, 2010, the state court dismissed this second action without prejudice. (Docket #10, Ex. L).

On September 23, 2010, the debtor commenced this adversary proceeding against Kleem, Vanni, and Vanni & Associates, Inc. (collectively "defendants"). In its complaint, the debtor listed seven counts: Count I, that "Vanni, with instructions from either Kleem and/or Kleem's representatives used false information" and over-inflated the appraisal value of the real estate subject to the stock redemption agreement; Count II, that defendants "conspired to provide a false and inflated valuation of the real estate"; Count III that defendants "willfully engaged in a

pattern of fraud in order to obtain a recovery from the debtor to which Kleem was not entitled to"; Count IV, that "Vanni was negligent in preparing his appraisal of the real property"; Count V that the debtor is entitled to punitive damages; Count VI that because the debtor does not owe Kleem any money, Kleem's judgment lien should be avoided; and Count VII, that because the debtor does not owe Kleem any money, the debtor's objection to Kleem's proof of claim should be sustained.

## JURISDICTION

Whether this court has subject matter jurisdiction over some or all of the debtor's claims in this proceeding is disputed. In general, this Court has jurisdiction over matters related to a bankruptcy proceeding under 28 U.S.C. §§ 1334 and 157(a) and Local General Order Number 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1143-44 (6th Cir. 1991). As discussed more fully below, however, the defendants assert that this Court lacks subject matter jurisdiction over the debtor's complaint under the *Rooker-Feldman* doctrine.

In addition, because the defendants have not consented to the entry of final orders or judgment by the undersigned bankruptcy judge on non-core proceedings, "any final order or judgment [on non-core proceedings] shall be entered by the district judge after considering the bankruptcy judge's proposed findings and

7

conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). Nevertheless, if the undersigned judge determines that subject matter jurisdiction is lacking, the Court may dismiss the claim(s) for which subject matter jurisdiction is lacking without seeking a final determination from a district judge. *See Banus v. U.S. Dept. of Educ.*, Case No. 1:06cv1833 n.1 (N.D. Ohio Oct. 12, 2006).[3] Therefore, for purposes of the defendants' motion to dismiss for lack of subject matter jurisdiction, the Court need not decide whether the seven counts contained in the adversary complaint are core or non-core proceedings. *See* 28 U.S.C. § 157(b)(2)(B) and (C) (core proceedings include "allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate." *See also Stern v. Marshall*, No. 10-179 (U.S. Supreme Court, cert. granted Sept. 28, 2010, argued Jan. 18, 2011) (addressing constitutionality of designating compulsory counterclaims as "core proceedings" under 28 U.S.C. § 157(b)(2)(C)).

DISCUSSION

The defendants assert that this Court lacks subject matter jurisdiction over

---

[3] A copy of Judge O'Malley's decision in *Banus* is attached.

8

the debtor's complaint under the *Rooker-Feldman* doctrine. In 2005, the Supreme

Court had occasion to explain and restate what has become known as the

*Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

544 U.S. 280 (2005). The Supreme Court summarized the *Rooker-Feldman*

doctrine as follows:

> *Rooker* was a suit commenced in Federal District Court to have a judgment
> of a state court, adverse to the federal court plaintiffs, "declared null and
> void." 263 U.S. at 414. In *Feldman,* parties unsuccessful in the District of
> Columbia Court of Appeals (the District's highest court) commenced a
> federal-court action against the very court that had rejected their
> applications. Holding the federal suits impermissible, we emphasized that
> appellate jurisdiction to reverse or modify a state-court judgment is lodged,
> initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by
> 28 U.S.C. § 1257, exclusively in this Court. Federal district courts, we noted,
> are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in
> *Rooker* and *Feldman* had litigated and lost in state court. Their federal
> complaints, we observed, essentially invited federal courts of first instance
> to review and reverse unfavorable state-court judgments. We declared such
> suits out of bounds, *i.e.,* properly dismissed for want of subject-matter
> jurisdiction.
>      The *Rooker-Feldman* doctrine, we hold today, is confined to cases of
> the kind from which the doctrine acquired its name: cases brought by
> state-court losers complaining of injuries caused by state-court judgments
> rendered before the district court proceedings commenced and inviting
> district court review and rejection of those judgments. *Rooker-Feldman* does
> not otherwise override or supplant preclusion doctrine or augment the
> circumscribed doctrines that allow federal courts to stay or dismiss
> proceedings in deference to state-court actions.

544 U.S. at 283-84.

In the adversary proceeding currently before the Court, the debtor seeks

9

damages under seven separate counts, all of which stem from an allegedly false, fraudulent, or negligent appraisal that resulted in a state court judgment against the debtor. The defendants assert that this Court lacks subject-matter jurisdiction because this Court lacks appellate jurisdiction to modify the state court judgment, which fixed the amount owed pursuant to the agreed stock redemption provisions. In other words, according to the defendants, under the framework of *Rooker-Feldman-Exxon*, this adversary proceeding is brought by a state-court loser complaining of injuries caused by a state-court judgment rendered before the federal court proceedings commenced and inviting federal court review and rejection of that state-court judgment.

In contrast, the debtor asserts that *Rooker-Feldman* does not apply because it is not challenging the state-court judgment. Rather, in the words of the debtor, this is an independent action for damages caused by an allegedly false, fraudulent, or negligent appraisal used in the context of the state-court litigation.

In *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the Sixth Circuit has explained that the key inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury which the plaintiff alleges in his or her federal complaint:

If the source of the injury is the state court decision, then the

10

*Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, 451 F.3d at 393. The Sixth Circuit further explained:

> The question naturally arises as how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction. We find an appropriate rule of thumb in the Fourth Circuit's decision in *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006). That court explained:

>> The plaintiffs in *Rooker* and *Feldman* sought redress for an injury allegedly caused by the *state-court decision* itself –in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot* [a pre-*Exxon Mobil* case], by contrast, we extended the *Rooker-Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions*.

> *Id.* at 717. . . . The Second Circuit employs a similar inquiry. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) ("[F]ederal plaintiffs are not subject to the *Rooker-Feldman* bar unless they complain of an injury caused by a state judgment."). In differentiating between a barred claim and a valid claim under *Rooker-Feldman*, the Second Circuit provided two instructive examples:

>> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the

11

Supreme Court may hear appeals from state-court judgments. Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* Of course, there are certain exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself. *See id.* at 88 (finding that the plaintiffs' challenge to a county board of election's refusal to tally certain absentee ballots was in fact a challenge to the state court judgment that the ballots were invalid). The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.

*McCormick*, 451 F.3d at 393-94.

In *McCormick*, the proceedings arose out of conflicting claims of ownership of real property. A husband conveyed real property to his estranged wife as consideration for her to withdraw her divorce complaint. 451 F.3d at 385. The wife subsequently deeded the property to her daughter. *Id.* The husband died, and the daughter filed a quiet title claim against the husband's estate. *Id.* at 386.

12

The Michigan trial court found the daughter had no ownership interest in the property because (1) the conveyance from the husband to wife was void because it "lacked consideration and was against public policy" and (2) the conveyance from the wife to her daughter was void because it attempted to conceal marital assets from the divorce court and violated the divorce court injunction against transfers of marital property. 451 F.3d at 386-87 (internal quotation omitted). On appeal, judgment was vacated, and on remand, the state trial court found the husband's estate owned the property subject to the wife's life estate interest, which was contingent on the wife insuring the property and naming her husband's estate as beneficiary. *Id.* at 387. The state appellate court and Michigan Supreme Court affirmed this decision. *Id.* In 2003, a fire destroyed the property. *Id.* The daughter was the named beneficiary of the insurance proceeds from the fire. *Id.* The husband's estate moved for an appointment of a receiver since the wife had failed to insure the property for the estate's benefit and her life estate was thus extinguished. *Id.* The daughter was not made a party to the receivership action. *Id.*

In 2004, the daughter filed a complaint against the current and former administrators of the husband's estate in the United States District Court for the Eastern District of Michigan. 451 F.3d at 388. The daughter-plaintiff alleged the

13

following: Count I, that the estate administrators seized the property under color of state law through "fraud, fabricated information, withholding of relevant material, . . . false testimony, malicious, reckless unreasonable acts in violation of the First, Fifth, and Fourteenth Amendments"; Count II, that because she was not made a party to the action appointing a receiver, that the order of receivership was void; Count III, that the administrators engaged in various frauds and misrepresentations; Count IV, that the estate administrators perpetrated fraud and misrepresentation, with a state common law claim of abuse of process; and Count V, that a Michigan statute which gave the Michigan probate court jurisdiction was unconstitutionally vague and over-broad. 451 F.3d at 388.

The plaintiff also filed a complaint in federal court against the court-appointed receiver and the insurance company alleging: Count I, that the order of receivership seized the property in violation of the First, Fifth, and Fourteenth Amendments and the order illegally seized the proceeds of the insurance policy; Count II, that a scheduled search of the property by the receiver violated the Fourth Amendment; and Count III, that the order of receivership and the receiver's resulting actions were based on fraud and misrepresentation in violation of the Fifth and Fourteenth Amendments. *Id.* The district court dismissed both of the complaints due to lack of subject matter jurisdiction based on

14

the *Rooker-Feldman* doctrine.  *Id.*

On appeal, the Sixth Circuit held that while some claims were barred by the *Rooker-Feldman* doctrine, the remainder were "independent" claims over which the federal courts had jurisdiction. The non-barred claims were as follows: (1) the plaintiff's claim against the estate administrators for seizing the property under color of state law through fraud, fabricated information, withholding of relevant material, false testimony, and malicious, reckless and unreasonable acts in violation of the First, Fifth, and Fourteenth Amendments, (2) the plaintiff's claim against the estate administrators for not making her a party to the receivership action, (3) the plaintiff's claim against the estate administrators that they engaged in various fraud and misrepresentations and abuse of process, and (4) the plaintiff's claim against the receiver and insurance company that the order of receivership and the receiver's resulting actions were based on fraud and misrepresentation in violation of the Fifth and Fourteenth Amendments.  451 F.3d at 389.

Focusing on the source of the alleged injuries, the Sixth Circuit held that "[n]one of these claims assert an injury caused by the state court judgments . . . . Instead, Plaintiff asserts *independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means . . ."  *Id.*  Even though the injuries of which the plaintiff

15

complained helped to cause the adverse state judgments, these claims were "independent" because they stemmed from "some other source of injury, such as a third party's actions." *Id.* at 393. On the other hand, the court explained that the plaintiff's claim that the state court's "order of receivership in and of itself is illegal and causes Plaintiff harm" was barred by *Rooker-Feldman* because it sought review of the state court order and thus was not an independent claim. *Id.* at 395. *Accord Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010); *Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007); *Todd v. Weltman, Weinberg & Reis Co.,LPA*, 434 F.3d 432 (6th Cir. 2006); *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995); *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009).

In the present adversary proceeding, like the situation in *McCormick*, the debtor asserts both independent claims from the state court judgment and claims that seek review of the state court judgment. The Court holds Counts VI and VII are barred by *Rooker-Feldman* because these counts essentially seek review of the state court order, which awarded Kleem $136,111.00, and thus are not independent claims. The federal courts are barred by *Rooker-Feldman* from reviewing a final state court judgment; thus, this Court is barred from disallowing Kleem's claim for $136,111.00 and from avoiding the judgment lien filed by Kleem for this amount.

16

Counts I, II, III, IV, and V, however, are not barred by *Rooker-Feldman* because they are "independent" and stem from "some other source of injury" than the state court judgment. Namely, these claims stem from the harm caused by the allegedly false, fraudulent, or negligent appraisal conducted by Vanni and submitted to the court by Kleem. The asserted damages, like the asserted damages in *McCormick*, were allegedly caused by misrepresentations and fraud in the context of the state-court litigation, but not from the state court judgment itself. That these claims may be "inextricably intertwined" with the state court judgment is insufficient to invoke *Rooker-Feldman*. *McCormick*, 451 F.3d at 394-95.

Of course, just as the claims in *McCormick* were dismissed on alternative grounds, such as claim preclusion, the debtor's claims in the current adversary proceeding may also be dismissed on res judicata or other grounds. *See McCormick*, 451 F.3d at 396-98. For example, if the debtor knew of the false, fraudulent, or negligent appraisal during the first state court proceeding before final judgment, Counts I through V of the debtor's adversary complaint may well be barred under claim preclusion. *Cf. Jackson v. Lou Cohen, Inc.*, 618 N.E.2d 193 (Ohio App. 8 Dist. 1992) (no claim preclusion, even though odometer fraud claim arose from same transaction or occurrence as the plaintiff's first lawsuit against car dealer because plaintiff had no reason to know of odometer fraud until after first

17

judgment was rendered); *Davis v. Wal-Mart Stores, Inc.*, No. 75224, 2000 WL 504114 (Ohio App. 8 Dist. Apr. 27, 2000) (no claim preclusion because plaintiff had no reason to know of spoliation of evidence claim until after jury verdict was rendered in her wrongful death claim).  In any event, res judicata and collateral estoppel are not the subject of the current motion.[4]

---

[4]It is not clear whether fraud was actually litigated in the first state court case or on appeal. The state court motion to exclude Vanni's appraisal does not overtly allege fraud or negligence but asks the court to exclude Vanni's appraisal because it is "based on erroneous and inaccurate information."  (Docket #10, Ex. H).  On the other hand, defendants contend that fraud was alleged in the first state court proceeding and that "this argument was specifically denied" by the state appellate court .  (Docket #19 at 11).

18

CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss as to Counts VI and VII pursuant to *Rooker-Feldman* and denies defendants' motion to dismiss as to Counts I through V. As the Court previously deferred discovery, as well as briefing on the defendants' motion for summary judgment, the Court will conduct a status conference at 1:30 P.M. on March 15, 2011.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|                                        |   |                        |
|----------------------------------------|---|------------------------|
| **THOMAS A. BANUS,**                   | : | **Case No. 1:06cv1833** |
|                                        | : |                        |
| **Plaintiff,**                         | : | **JUDGE O'MALLEY**     |
|                                        | : |                        |
| **v.**                                 | : |                        |
|                                        | : |                        |
| **U.S. DEPARTMENT OF EDUCATION, et al.,** | : | <u>**ORDER**</u>    |
|                                        | : |                        |
| **Defendants.**                        | : |                        |

This case arises out of an adversary complaint within a bankruptcy case. Pending before this Court - and constituting the only filing in this action - are *Proposed Conclusions of Law* (Doc. 1) submitted pursuant to 28 U.S.C. § 157(c)(1) by the Honorable Arthur I. Harris of the United States Bankruptcy Court for the Northern District of Ohio. In his Proposed Conclusions, the Bankruptcy Judge recommends that this Court dismiss Plaintiff Thomas Banus' amended adversary complaint for lack of subject matter jurisdiction because Banus' claim is not "related to" a case under Title 11. The gist of the Bankruptcy Judge's conclusion is that Banus' claim, <u>brought as an adversary complaint in a bankruptcy case</u>, does not fall under 28 U.S.C. § 1334 - the statute governing federal jurisdiction of bankruptcy matters - and should be brought, if at all, as a civil action filed in district court. For the reasons outlined below, this Court agrees with the Bankruptcy Judge. This case is, therefore, **DISMISSED** for lack of subject matter jurisdiction.

The Bankruptcy Judge submits his Proposed Conclusions pursuant to 28 U.S.C. § 157(c)(1), which provides that:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.[1]

Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure, a party must file any written objections within ten days of being served with a copy of the proposed findings of fact and conclusions of law. Fed. R. Bank. P. 9033(b). In this case, the docket in the underlying bankruptcy proceeding reflects that the Bankruptcy Judge's Proposed Conclusions were issued on June 30, 2006

---

[1] Although it does not affect this Court's decision, it is not clear that 28 U.S.C. § 157(c)(1) governs the type of proceeding at issue in this case. According to the plain language of 28 U.S.C. § 157(c)(1), in order for that section to be invoked, a proceeding must be (1) non-core, but (2) "related to" a case under Title 11. In this case, the Bankruptcy Judge determined that Banus' claim was non-core, but he also determined that the claim was not "related to" a case under Title 11, making this proceeding, on its face, outside of the purview of 28 U.S.C. § 157(c)(1). Indeed, the Bankruptcy Judge's determination that Banus' claim was not "related to" a case under Title 11 formed the basis of his conclusion that the bankruptcy court lacks subject matter jurisdiction over this case, as the same "related to" language appears in the relevant jurisdictional statute. See 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." (emphasis added)); see also In re Wolverine Radio Co., 930 F.2d 1132, 1143-44 (6th Cir. 1991) (explaining that, to determine whether a particular matter falls within bankruptcy jurisdiction, a court need not distinguish between the terms "arising under," "arising in," or "related to" cases under title 11; "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."). Unless the term "related to" has a broader meaning in 28 U.S.C. § 157(c)(1), the statute under which the Bankruptcy Judge submitted his proposed conclusions, than it does in 28 U.S.C § 1334(b), the jurisdictional statute, it appears that the Bankruptcy Judge was not required to submit proposed findings and conclusions of law and could have simply dismissed the case for lack of subject matter jurisdiction. The Bankruptcy Judge's decision to submit proposed conclusions as opposed to outright dismissal has no material effect, however, because this Court agrees that there is no "related to" jurisdiction under 28 U.S.C. § 1334(b) and that dismissal is appropriate. In any event, neither party objected to the bankruptcy judge's procedural characterization of this matter.

2

and were served with a BNC Certificate of Service on July 2, 2006. Banus, acting *pro se*, then filed written objections on July 14, 2006, twelve days after being served with a copy of the proposed conclusions.[2] Although, under the Federal Rules of Civil Procedure, Banus' objections would have been timely because weekends and legal holidays are excluded from a prescribed time period of less than <u>eleven</u> days, Banus' objections are untimely in this case because the Federal Rules of Bankruptcy Procedure, which govern the filing of his objections, provide that weekends and legal holidays are only excluded when the prescribed time period is less than <u>eight</u> days. *Compare* Fed. R. Civ. P. 6(a) *with* Fed. R. Bank. P. 9006(a). As such, Banus' objections were filed beyond the time limit prescribed by Rule 9033 of the Federal Rule of Bankruptcy Procedure and will not be considered by this Court.[3]

Pursuant to 28 U.S.C. § 157(c)(1), "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *See also* Fed. R. Bank. P. 9033(d) ("The district judge shall make a de novo review . . . of any portion of the bankruptcy judge's findings of fact or conclusion of law to which specific written objection has been made in accordance with this rule."). Having considered the Bankruptcy Judge's Proposed

---

[2] Banus filed his objections with the bankruptcy court rather than with this Court, which appears to be the proper procedure. *See* Fed. R. Bank. P. 9033(b) ("a party may serve and file <u>with the clerk</u> written objections . . .") (emphasis added); Fed. R. Bank. P. 9001 (defining "clerk" as the "bankruptcy clerk.").

[3] Even if the Court were to consider Banus' objections, they do not warrant departure from the Bankruptcy Judge's conclusions. Banus raises only two objections, neither of which specifically relate to the proposed conclusion that subject matter jurisdiction does not exist. In his first objection, Banus argues that he would not even have to pursue his false certification claim if his student loans had been discharged in the first instance, and, in his second objection, he argues that not permitting him to discharge his debt violates the policy behind bankruptcy law. Neither of these arguments relate to the Bankruptcy Judge's finding that this Court lacks subject matter jurisdiction and, therefore, would not alter this Court's decision.

3

Conclusions of Law, the undersigned agrees that Banus' false certification claim, the only claim remaining in his adversary complaint,[4] does not "relate to" his bankruptcy proceeding for purposes of 28 U.S.C. § 1334 - the statute governing federal jurisdiction over bankruptcy matters.[5] Accordingly, this Court and, by extension, the Bankruptcy Court, lack subject matter jurisdiction over that claim in the manner in which it has been brought - as part of an adversary complaint in a bankruptcy case. As the Bankruptcy Judge noted, Banus' claim must be brought, if at all, in a civil action filed in district court.[6]

The Court, therefore, **DISMISSES** this action for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: October 12, 2006**

---

[4] The only other claim in Banus' adversary complaint was a claim which the Bankruptcy Judge had statutory authority to resolve. That claim was dismissed by summary judgment.

[5] In this case, the Bankruptcy Judge found that Banus' claim is not "related to" his underlying bankruptcy case because the outcome of his false certification claim is not dependent upon application of the Bankruptcy Code, it will not affect the outcome of Banus' bankruptcy estate, and, although, if successful, the claim will benefit Banus personally, it will not bring more monies into or affect the distribution of his bankruptcy estate.

[6] Like the Bankruptcy Judge, the undersigned expresses no opinion regarding Banus' ultimate ability to maintain a claim in district court, especially in light of the arguments raised by Defendants, which the Bankruptcy Judge declined to address in light of his determination, that Banus failed to exhaust his administrative remedies or the alleged lack of a private right of action under 20 U.S.C. § 1087(c). The undersigned merely notes that the appropriate place to decide those questions is in the context of a civil complaint in district court, not in an adversary complaint in bankruptcy court.

4