The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 6, 2011, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: September 6, 2011

Arthur I. Harris
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 09-21982 |
| | ) | Chapter 11 |
| SOUTHWEST SPORTS | ) | |
| CENTER, INC., | ) | Adversary Proceeding |
|     Debtor. | ) | No. 10-1312 |
| | ) | |
| SOUTHWEST SPORTS | ) | Judge Arthur I. Harris |
| CENTER, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN KLEEM, *et al.*, | ) | |
|     Defendants. | ) | |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the defendants' Motion for Abstention (Docket #24). The parties have previously litigated issues related to the real estate appraisal and sale of the plaintiff-debtor's commercial property in state court proceedings. This Court previously dismissed some claims of this adversary complaint based on lack of subject matter jurisdiction. The defendants seek to

---

[1] This Memorandum of Opinion is not intended for official publication.

have the Court to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) because the remaining claims in this adversary proceeding would more appropriately be heard by an Ohio state court. For the reasons that follow, the motion is granted.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute has had a convoluted history through various state and federal courts. The litigation began in the Cuyahoga County Court of Common Pleas in 2007, and the decision in that state court case was appealed to the state court of appeals. In 2009 a second state court case was filed, also in the Court of Common Pleas, as well as the debtor's filing of a Chapter 11 case in Bankruptcy Court. In 2010, the debtor filed this adversary proceeding.

Southwest Sports Center, Inc. ("the debtor") owns commercial real property in Berea, Ohio. This commercial property includes a golf driving range, a Dairy Queen Restaurant, a miniature golf course, and a single-family residence. On April 22, 1997, the debtor entered into a stock redemption agreement with defendant John Kleem ("Kleem"). Under the agreement, the debtor agreed to pay Kleem certain amounts of money from 1997 through 2006 and then 1/3 of the net proceeds of the sale of the debtor's real estate. The stock redemption agreement also stated, in pertinent part, that if the debtor had not entered into a contract for

2

sale before November 1, 2006, the parties would meet to see if an agreement could be reached on the current value of the property. If they could not reach agreement on the current value, then each party would select an appraiser. In the event that those appraisers agreed on a price, the property would be valued at that price. If the appraisers could not agree, a third appraiser would be selected. Each appraiser would then submit his opinion, and the average of the three values would be a final determination of the property's value.

On or about December 8, 2006, Kleem sent a letter to the debtor in which he alleged that the real estate subject to the stock redemption agreement had a fair market value of $2,650,000. On May 11, 2007, Kleem filed suit against the debtor in Cuyahoga County Court of Common Pleas to enforce the terms of the stock redemption agreement (Case No. CV-07-624066)(the "first state court case"). On January 24, 2008, Kleem filed a motion for partial summary judgment, seeking to confirm the parties' obligation to have the property appraised, and assessing damages. In support of his motion, Kleem attached the affidavit and appraisal of Julian Vanni, a State Certified Real Estate Appraiser. Vanni appraised the fair market value of the property at $2,500,000.

On March 19, 2008, the state trial court granted Kleem's motion for partial summary judgment, ordering the debtor to appoint its own appraiser within 30

3

days. The debtor appointed James T. Caldwell to appraise the property. Caldwell determined that the real property had a fair market value of $1,300,000. The debtor submitted its appraisal to the court on June 16, 2008. As the two appraisers, Vanni and Caldwell, could not reconcile their valuations of the property, the state court ordered the parties to select a third appraiser pursuant to the terms of the stock redemption agreement.

On September 9, 2008, the third appraiser, Jeffrey T. Sherman, determined that the real property had a fair market value of $1,175,000. On October 7, 2008, the third appraisal was filed with the court. At a pretrial conference all parties stipulated to the authenticity and admissibility of the three appraisals. The parties each moved for summary judgment based on their respective interpretations of the appraisals and the contractual terms. The debtor also sought to exclude Vanni's appraisal because "it was based on erroneous and inaccurate information." (Docket #10, Ex. H). On December 15, 2008, the court denied the debtor's motion to exclude Vanni's appraisal and granted summary judgment to Kleem based on the average of the three appraisals pursuant to the stock redemption agreement. (Docket #10, Ex. I, J). On December 16, 2008, Kleem filed a judgment lien in the Cuyahoga County Records Office (JL-08-356106). The debtor appealed the trial court's decision on June 25, 2009. The state appellate court affirmed the trial

4

court's order granting summary judgment to Kleem and holding that the appraisals were not evidence from which the court was to determine the property's value but rather, the appraisals pertained to a contractual procedure for determining the property's value. *See Kleem v. Southwest Sports Ctr. Inc.*, No. 92674, 2009 WL 1819442 (Ohio App. 8 Dist. June 25, 2009).

On June 15, 2009, within a year of judgment in the first state court case and before the appeal was decided, the debtor filed a complaint in the Cuyahoga County Court of Common Pleas (Case No. CV-09-695811)(the "second state court case"). This complaint alleged that Vanni acted fraudulently and with professional negligence, and that Kleem conspired with Vanni to defraud the court.

On December 20, 2009, the debtor filed a voluntary bankruptcy petition under Chapter 11. On January 28, 2010, the debtor filed a notice to stay proceedings in the second state court case, which pertained to Vanni and Kleem's alleged fraud and conspiracy. On February 12, 2010, the state court dismissed the second state court case without prejudice.

On December 23, 2009, Kleem filed a proof of claim in the debtor's bankruptcy case based on the amount still owed on the judgment lien. The claim was amended on May 3, 2010, presumably to include interest on the judgment and attorney fees. The debtor filed an objection to the proof of claim on February 7,

5

2011. (Docket #63).

On September 23, 2010, the debtor commenced this Adversary Proceeding against Kleem, Vanni, and Vanni & Associates, Inc. (collectively "defendants"). In its complaint, the debtor listed seven counts: Count I, that Vanni provided the court with a false and misleading appraisal and over-inflated the appraisal value of the real estate; Count II, that defendants conspired to provide a false and inflated valuation of the real estate; Count III, that defendants engaged in a pattern of fraud in order to obtain recovery from the debtor; Count IV, that Vanni was negligent in preparing the appraisal of the real property; Count V, that the debtor was entitled to punitive damages; Count VI, that because the debtor did not owe Kleem any money, Kleem's judgment lien should be avoided; and Count VII, that because the debtor did not owe Kleem any money, the debtor's objection to Kleem's proof of claim should be sustained.

On December 10, 2010, the defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction in the adversary proceeding (Docket #14). On February 23, 2011, this Court issued a Memorandum of Opinion dismissing Counts VI and VII of the complaint for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine (Docket #21).

On March 14, 2011, defendants filed their Motion for Abstention

6

10-01312-aih    Doc 36    FILED 09/06/11    ENTERED 09/07/11 09:52:18    Page 6 of 17

(Docket #24). The debtor filed its Brief in Opposition ("Brief in Opp.") on April 19, 2011 (Docket #29). In its Brief in Opp. the debtor states that the Adversary Proceeding claims "constitute counterclaims to the Proofs of Claim." Brief in Opp. at 5 (citing Fed. R. Bankr. P. 7013). On May 2, 2011, defendants filed a supplemental memorandum in support of their motion (Docket #31). At a hearing on May 10, 2011, this Court held the Motion for Abstention in abeyance pending the U.S. Supreme Court's ruling in *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011). The parties were instructed to file supplemental briefs within four weeks of the Supreme Court's ruling. Each party filed a supplemental brief on July 21, 2011 (Docket ##34, 35).

## JURISDICTION

This Court has jurisdiction over matters related to a bankruptcy proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local General Order Number 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1143-44 (6th Cir. 1991).

## DISCUSSION

The defendants move this Court to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) because the remaining claims in this Adversary Proceeding

7

would be more appropriately heard by an Ohio state court.

Section 1334(c)(1) provides in pertinent part:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title11.

Courts look to a number of factors in determining whether permissive abstention under § 1334(c)(1) is appropriate:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

8

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of the right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*MD Acquisition LLC, et al., v. Myers, et al. (In re Martin Designs, Inc.)*, 2009 WL 2707215 at *6-7 (Bankr. N.D. Ohio Aug. 26, 2009) (citing *Delphi Automotive Systems, LLC, v. Segway, Inc.*, 519 F. Supp.2d 662, 670-72 (E.D. Mich. 2007)), *see also In re Dayton Title Agency Inc.,* 304 B.R. 323, 329-30 (Bankr. S.D. Ohio 2004). "This is a multi-factor balancing test, not a rule in which every element must be satisfied . . . not all factors need to weigh in favor of permissive abstention in order for it to be appropriate." *Martin Designs* at *7. Permissive abstention is available in both core and non-core proceedings, and the decision to abstain is "in the sound discretion of the bankruptcy judge . . . ." *In re Underwood*, 229 B.R. 471, 476 (Bankr. S.D. Ohio 2003).

The debtor first argues that since this Adversary Proceeding is a counterclaim, it is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(C). However, the Court is advised under one of the factors to be considered in permissive abstention to look to "the substance rather than the form of an asserted core proceeding." *Martin Designs* at *6. The substantive rights at issue in this

9

litigation -- fraud, conspiracy and negligence -- all arose pre-bankruptcy under state tort law and could exist outside the bankruptcy.

In similar circumstances, courts in this circuit have held that such proceedings were not core proceedings. In *901 LLC v. Skyline Concrete Floor Corp. (In re Skyline Concrete Floor Corp.)*, 410 B.R. 564 (Bankr. E. D. Mich. 2008) the district court held:

> In this case, all of the claims asserted in this adversary proceeding do not invoke substantive rights created by federal bankruptcy law and could exist outside of the bankruptcy. Indeed, claims identical to those in this adversary proceeding were pending in the Oakland County Circuit Court and set for trial prior to the commencement of Skyline's Chapter 11 proceeding. Therefore, the Court concludes that the claims involved in this adversary proceeding are non-core.

*Id.* at *2. To paraphrase *Martin Designs*, with the minor edit of changing the identity of the state court in which the state court action was pending when the bankruptcy was filed, the Court could write this passage verbatim with respect to the state court action in this Adversary Proceeding. *Martin Designs* at *6. The state law claims in this Adversary Proceeding and its counterclaim will have no impact on the administration of the debtor's bankruptcy case, other than the debtor's possible recovery of assets, which is an insufficient basis upon which to find that the claims are core proceedings which must be decided by the bankruptcy court. *See Skyline Concrete Floor Corp.* 410 B.R. at 567.

10

The first state court action in this case was filed by the defendants. While that case was on appeal, but before the appeal had been decided, the debtor filed the second state court case. It appears obvious that neither party believes that the applicable state law is either unsettled or so difficult that the state court would not be able to resolve the issues before it. The second state court case, commenced by the defendant, was only dismissed without prejudice upon the notice to the state court of the debtor's filing of the bankruptcy petition.

In this Adversary Proceeding there is no basis for this court's jurisdiction outside of section 1334. In addition, the right to a jury trial, demanded by the debtor in the second state court case, will be preserved upon this Court's abstention. Further, Vanni and Vanni & Associates, Inc. are non-debtor parties to this action. All these reasons weigh in favor of permissive abstention under 28 U.S.C. § 1334(c)(1).

Moreover, while the decision to abstain in this case might have been a close question before *Stern*, after *Stern*, the Court has little doubt that abstention is the proper course in this matter, where the defendants have not consented to entry of final orders or judgment by the bankruptcy judge.

### *Stern v. Marshall*

As with many U.S. Supreme Court cases, *Stern* made a slow, tortured

journey to its final judgment.  In *Stern,* the plaintiff, the second wife of her wealthy husband, filed a suit against her stepson in Texas state probate court alleging that her husband, whose assets were being managed by his son because he was ill, had meant to provide for her through a trust and that her stepson had tortiously interfered with that gift.  After her husband died, the plaintiff filed a bankruptcy petition.  Her stepson filed a proof of claim against her bankruptcy estate seeking to recover damages.  He alleged that the plaintiff-debtor had defamed him during the probate court case by having her lawyers tell the press that he had engaged in fraud in controlling his father's assets.  The plaintiff-debtor filed a counterclaim for tortious interference with the expected gift of a trust.  The Bankruptcy Court, holding that it had core jurisdiction over the counterclaim, entered a final judgment after a five-day trial and awarded millions of dollars on her counterclaim.  The defendant appealed the judgment to the District Court.  While the counterclaim was on appeal, the stepson won a judgment against the debtor in the Texas probate court.

     The District Court held that since the counterclaim was not a "core" proceeding the Bankruptcy Court's judgment should be treated as proposed findings of fact and conclusions of law.  The District Court adopted the Bankruptcy Court's findings as modified, refusing to give preclusive effect to the

12

Texas probate court's ruling.  Following a separate appeal and opinion by the Supreme Court on the scope of the "probate exception," *see Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court remanded the case to the Court of Appeals.  On remand from the Supreme Court, the Court of Appeals reversed the District Court and held that § 157 mandated a "two-step approach" under which a bankruptcy judge could issue a final judgment in a proceeding only if the matter met both Congress's definition of a core proceeding and the matter arose under or in Title 11.  The Court of Appeals concluded that a "counterclaim under § 157(b)(2)(C) is properly a 'core' proceeding 'arising in a case under' the [Bankruptcy] Code only if the counterclaim is so closely related to [a creditor's] proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself." *In re Marshall*, 600 F.3d 1037, 1058 (9th Cir. 2010).  The Court of Appeals ruled that the counterclaim did not meet that test and so the bankruptcy court lacked authority to enter final judgment on the counterclaim.  That holding made the Texas probate court's judgment the earliest final judgment entered on the matters relevant to the case.  The Court of Appeals held that the District Court should have given the state probate court judgment preclusive effect. *Id.* at 1059, 1064-65.  The case was again appealed, and the Supreme Court again granted certiorari.

13

The Court granted certiorari to resolve a question left from its earlier decision: whether the bankruptcy court had authority to enter a final judgment on the debtor's counterclaim for tortious interference against her stepson. The *Stern* Court ruled the counterclaim was a "core proceeding" under the plain text of § 157(b)(2)(C). However, the Court went on to state that "although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the] counterclaim, Article III of the Constitution does not." *Stern,* 131 S. Ct. at 2608. The Court went on to state:

> This is not the first time we have faced an Article III challenge to a bankruptcy court's resolution of a debtor's suit. In *Northern Pipeline*, we considered whether bankruptcy judges . . . could "constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity that was not otherwise part of the bankruptcy proceedings. . . . The Court concluded that assignment of such state law claims for resolution by those judges "violates Art. III of the Constitution."

*Stern,* 131 S. Ct. at 2609-10 (citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53, 87 & n.40 (1982)). The court ruled that a non-Article III judge lacked constitutional authority to hear and determine a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. *Id.*

The *Stern* Court then looked to the category of cases involving "public

rights" that Congress could constitutionally assign to "legislative"courts for resolution. *Id.* The Court looked again to *Northern Pipeline* and stated that such "public rights" were found to extend " 'only to matters arising between' individuals and the Government 'in connection with the performance of the constitutional functions of the executive or legislative departments' and did not encompass adjudication of the state law claim at issue in that case." *Stern*, 131 S. Ct. at 2610 (citing *Northern Pipeline*, 458 U.S. at 67-72). The Court further held that Congress could not grant a non-Article III judge the authority to make a final ruling on a common law cause of action which neither derives from nor depends on federal law. *Id.*

The debtor's claims in its Adversary Proceeding are said by the debtor to be counterclaims to Kleem's proof of claim, Brief in Opp. at 5, and as such are considered "core proceedings" pursuant to § 157(b)(2)(C) under *Stern*. However, because the debtor's Adversary Proceeding is based on Ohio state law*, Stern* also holds that this Court lacks the constitutional authority to enter a final judgment on a counterclaim when it is based on a state's common law and is otherwise independent of federal bankruptcy law. *Stern*, 131 S. Ct. at 2611.

In this case, Kleem filed a proof of claim (Claim #1) based on the judgment lien filed in the Cuyahoga County Records Office. The debtor filed its Adversary

15

Proceeding alleging fraud, conspiracy and negligence - all state court claims alleged in the second state court case. The Bankruptcy Court's ruling on Kleem's proof of claim will not resolve the debtor's counterclaim. Thus this Court has no authority under the U.S. Constitution to enter a final judgment. In other words, after *Stern*, if this matter were tried in bankruptcy court, the undersigned judge could only issue proposed findings of fact and conclusions of law, with *de novo* review by a United States District Judge. Alternatively, one or more of the parties could seek withdrawal of the reference pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) and have the matter heard entirely before a United States District Judge.

Under these circumstances, abstention is the proper course. If the matter were tried by the undersigned judge, there could be no final decision until after *de novo* review by a United States District Judge. Any benefit from the undersigned judge's familiarity with the issues in this matter would be offset by the need for an Article III judge to review the matter before entering final judgment. Similarly, if the matter were heard entirely before an Article III judge, that judge would have none of the undersigned judge's familiarity with the issues from having presided over the bankruptcy case and this Adversary Proceeding.

Therefore, pursuant to 28 U.S.C. § 1334(c)(1) and *Stern*, abstention is the

proper course. The Ohio state court is the preferred forum to rule on the debtor's remaining claims. All of the remaining claims in this Adversary Proceeding, Counts I through V, are based on fraud, negligence or conspiracy - all state law claims sounding in tort, and pre-dating the filing of the bankruptcy petition. Nor should there be any obstacle to proceeding in state court, since the state law claims were dismissed without prejudice on February 12, 2010, and 11 U.S.C. § 108 would extend any statute of limitations for two years after the order of relief, *i.e.*, two years after December 20, 2009. In *Mann v. Waste Management of Ohio, Inc.*, 253 B.R. 211 (N.D. Ohio 2000), the District Court held that "federal courts should not be hesitant to decline to exercise jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.' " *Mann*, 253 B.R. at 215 (citing *In re White Motor Credit*, 761 F.2d 270, 274 (6th Cir. 1985) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996)).

## CONCLUSION

Accordingly, for the reasons stated above, the Motion for Abstention is granted.

IT IS SO ORDERED.

17

10-01312-aih    Doc 36    FILED 09/06/11    ENTERED 09/07/11 09:52:18    Page 17 of 17